IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEATHERFORD U.S., LP and | § | |
| WEATHERFORD TECHNOLOGY | § | |
| HOLDINGS, LLC | § | |
| | § | CIVIL ACTION NO. 23-cv-3416 |
| VS | § | **JURY DEMANDED** |
| | § | |
| IRON IQ, INC. | § | |

**PLAINTIFFS WEATHERFORD U.S., LP AND
WEATHERFORD TECHNOLOGY HOLDINGS, LLC'S
VERIFIED COMPLAINT**

Plaintiffs Weatherford U.S., L.P. ("**Weatherford U.S.**") and Weatherford Technology Holdings, LLC ("**Weatherford Tech**") (collectively "**Weatherford**"), for their Verified Complaint against Defendant Iron IQ, Inc. ("**Iron-IQ**") alleges as follows:

**NATURE AND SUMMARY OF VERIFIED COMPLAINT**

1.     This action is to recover damages and injunctive relief for trade secret misappropriation, breach of contract, harmful access by computer, unfair competition, and tortious interference.

2.     Iron-IQ devised and executed a scheme to obtain unauthorized copies of Weatherford's CygNet® supervisory control and data acquisition ("SCADA") platform to, among other things, misappropriate Weatherford's trade secrets.

3.     Iron-IQ's actions were in violation of End-User License Agreement ("EULA") for CygNet® SCADA platform. *See* Ex. 1.

4.     Iron-IQ's actions were also in violation of the harmful access by computer law of the State of Texas.

5.     Iron-IQ's illegal actions were for the purpose of copying and/or mimicking the CygNet® SCADA platform's front-end interface, back-end databases, polling engine, and

customer specific scripts in Iron-IQ's competing SCADA software platform and to migrate

Weatherford's customers from the CygNet® SCADA platform to Iron-IQ's SCADA software.

## PARTIES

6.     Weatherford U.S. is a limited partnership existing under the laws of the State of

Louisiana, with its principal place of business in Houston, Texas.

7.     Weatherford Tech is a limited liability company existing under the laws of the State

of Delaware with its principal place of business in Houston, Texas.

8.     Iron-IQ is a corporation organized and existing under the laws of the State of

Colorado, with its principal place of business in Grand Junction, Colorado.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331–32 and 1367.

10.    The Court has original jurisdiction under 28 U.S.C. § 1331 (federal question) over

Weatherford's claim under the Defend Trade Secrets Act ("DTSA") set forth in 18 U.S.C. § 1836.

11.    The Court has supplemental jurisdiction over Weatherford's remaining claims

pursuant to 28 U.S.C. § 1367 because those claims are so closely related to claims in the action

within the Court's original jurisdiction that they form part of the same case or controversy and

therefore make the Court's exercise of supplemental jurisdiction appropriate.

12.    In addition, this Court has diversity jurisdiction under 28 U.S.C. § 1332 over

Weatherford's claims arising under the laws of the State of Texas. For purposes of determining

diversity jurisdiction, Weatherford U.S. is a citizen of Louisiana by virtue of being organized and

existing under the laws of Louisiana, and Weatherford U.S. is also a citizen of Texas by virtue of

having its principal place of business located in Houston, Texas. Weatherford Tech is a citizen of

Delaware by virtue of being organized and existing under the laws of Delaware, and Weatherford Tech is also a citizen of Texas by virtue of having its principal place of business located in Houston, Texas. Iron-IQ is a citizen of Colorado by virtue of being organized and existing under the laws of Colorado and by virtue of having its principal place of business located in Grand Junction, Colorado.

13.     The amount in controversy in this action, exclusive of interest and costs, exceeds $75,000.00.

14.     By accessing Weatherford's CygNet® SCADA platform, Iron-IQ agreed to be bound by the EULA for the CygNet® SCADA platform, which includes a governing law and venue provision:

> 16.1 Governing Law and Venue. This EULA shall be governed, construed and interpreted in accordance with the laws of the State of Texas, without regard to any choice of laws or conflict of laws provisions which would direct the application of the laws of another jurisdiction. Venue for any litigation filed with respect to this EULA shall be exclusive in the courts, state or federal, sitting in Houston, Harris County, Texas.

Ex. 1 § 16.1.

15.     Accordingly, Iron-IQ consented to jurisdiction and venue in this Court for this litigation, which is filed with respect to the EULA.

16.     In addition, this Court has personal jurisdiction over Iron-IQ, as Iron-IQ has availed itself of the rights and benefits of the laws of Texas, conducts business in Texas, has systematic and continuous contacts with Texas, and has committed acts leading to this action in Texas. *See*, *e.g.*, https://iron-iq.com/press-release/modern-operator-partners-with-iron-iq-and-scoutfdc/ (last visited Sept. 12, 2023), https://iron-iq.com/company-news/jacob-allred-to-be-guest-speaker-at-2022-entelec-conference-expo/ (last visited Sept. 12, 2023).

17.     In addition, venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(1)–(2) and 1400, as Iron-IQ conducts business in this District, has systematic and continuous contacts with this District, and has committed acts leading to this action in this District. *See*, *e.g.*, https://iron-iq.com/company-news/jacob-allred-to-be-guest-speaker-at-2022-entelec-conference-expo/ (last visited Sept. 12, 2023).

## FACTUAL BACKGROUND

### I.     Weatherford's CygNet® SCADA Platform

18.     Weatherford's CygNet® SCADA platform is designed specifically for the oil and gas industry to allow operators to process, manage, and respond to data collected from a variety of sources—including downhole sensors, electronic flow measurement (EFM) devices, wellheads, surface facilities, plants, and pipelines.

19.     Through years of research and development, Weatherford has refined the user interface of the CygNet® SCADA platform to optimize how customers view and interact with their data.

20.     For each customer, Weatherford customizes the CygNet® SCADA platform to interact with customer-specific devices and specifications. This customization is done through scripts that allow (i) data to be pulled/collected from the customer's devices (e.g., sensors, electronic flow measurement (EFM) devices) and (ii) customer's devices to be activated by users of the software.

### II.     Iron-IQ's Unauthorized Access to Weatherford's CygNet® SCADA Platform

21.     Iron-IQ's business model is focused on moving customers from legacy SCADA systems to Iron-IQ's competing product line. *See* https://iron-iq.com/company/ (last visited Sept. 12, 2023); *see also* https://iron-iq.com/blog/now-or-never-cloud-based-scada-software-solutions/ (last visited Sept. 12, 2023).

4

22.     Weatherford recently learned that Iron-IQ employees were downloading versions of the CygNet® SCADA platform by using credentials from third-party licensees.

23.     Iron-IQ does not have, and has never had, a license to access the CygNet® SCADA platform.

24.     Accordingly, Weatherford immediately reached out to Iron-IQ on August 14, 2023, and demanded that Iron-IQ cease its access to the CygNet® SCADA platform and destroy all improperly obtained copies of the CygNet® SCADA platform. *See* Ex. 2 (Aug. 14, 2023 Letter from James Kurka, Associate General Counsel, Intellectual Property at Weatherford, to Michael Ligrani, CEO at Iron-IQ).

25.     Iron-IQ's counsel responded on August 21, 2023, admitting that Iron-IQ had accessed the CygNet® SCADA platform, but claimed such use was proper because Iron-IQ was using a 3-day trial version of the software. *See* Ex. 3 (Aug. 21, 2023 Letter from Andrew D. Skale of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ to Kevin W. Kirsch of Baker & Hostetler LLP on behalf of Weatherford). Iron-IQ admitted to using what it said was a 3-day trial at least two times. *See* Ex. 8 (Aug. 25, 2023 Correspondence from Kara Cormier of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ to Kevin W. Kirsch of Baker & Hostetler LLP on behalf of Weatherford).

26.     Iron-IQ and its counsel failed to acknowledge that a "trial version" is only accessible to existing CygNet® SCADA platform licensees, and is not available to any unlicensed party. Any person accessing any version of the CygNet® SCADA platform must execute a negotiated written license agreement before such access is allowed. Further, access cannot occur without login information, which is only provided after such written license agreement is executed.

Iron-IQ has neither entered into such a written license agreement nor received login information to allow for proper access to the CygNet® SCADA platform.

27.     Accordingly, Iron-IQ's August 21, 2023 letter and August 25, 2023 email are admissions that Iron-IQ knowingly accessed the CygNet® SCADA platform without authorization, and thus is an admission of liability for the causes of action alleged herein.

28.     Moreover, on August 18, 2023, *after* receiving Weatherford's initial letter on August 14, 2023, Iron-IQ's employee since 2019, Damon Baillie, once again accessed the CygNet® SCADA platform without proper authorization. On August 18, 2023, Mr. Baillie downloaded Cygnet® SCADA platform version 9.6 using login credentials from Caerus Oil & Gas, a company he worked at from 2017 to 2019.

29.     Caerus Oil & Gas, a current customer of Weatherford, had been using the Cygnet® SCADA platform version 9.6 since at least February 2023. There is no legitimate business purpose related to Caerus Oil & Gas for Mr. Baillie to be downloading a version of the CygNet® SCADA platform that is already in use. On information and belief, Mr. Baillie downloaded CygNet® SCADA platform version 9.6 in order to at least improperly assist in migrating other Weatherford customers operating under CygNet® SCADA platform version 9.6 to Iron-IQ.

30.     In correspondence on August 23, 2023 and again on August 30, 2023 Weatherford's counsel attempted to obtain information from Iron-IQ regarding Iron-IQ's unauthorized access to Weatherford's CygNet® SCADA platform to understand the extent and the purpose behind Iron-IQ's conduct. *See* Ex. 5 (Aug. 23, 2023 Correspondence from Kevin W. Kirsch of Baker & Hostetler LLP on behalf of Weatherford to Andrew D. Skale of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ) and Ex. 6 (Aug. 30, 2023

Correspondence from Kevin W. Kirsch of Baker & Hostetler LLP on behalf of Weatherford to Andrew D. Skale of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ).

31.     In response to Weatherford's inquiries regarding Iron-IQ's unauthorized access to Weatherford's CygNet® SCADA platform, Iron-IQ refused to provide the requested information and instead demanded that Weatherford's counsel "cease and desist" from further communication concerning Iron-IQ's conduct. *See* Ex. 7 (Sept. 1, 2023 Correspondence from Andrew D. Skale of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ to Kevin W. Kirsch of Baker & Hostetler LLP on behalf of Weatherford).

32.     While Iron-IQ has represented that "no employee or representative of Iron-IQ will run any version of Weatherford's CygNet software for any purpose" and "Iron-IQ does not have any copies of Weatherford's CygNet software in its possession, custody, or control" (*see* Ex. 7) based on Iron-IQ's conduct (e.g., downloading the CygNet® SCADA Platform again on August 18, 2023 even after Weatherford's initial letter on August 14, 2023), Weatherford strongly questions whether Iron-IQ will abide by this representation or whether it will once again access the CygNet® SCADA Platform without authorization to allow Iron-IQ to develop its SCADA platform, develop migration tools, migrate customer data, and to compete against Weatherford.

## COUNT I
### (Breach of the EULA for the CygNet® SCADA platform)

33.     Weatherford incorporates by reference the foregoing allegations as if fully set forth herein.

34.     The EULA (Ex. 1) is a valid and enforceable contract between Weatherford U.S. and Iron-IQ. Anyone accessing the CygNet® SCADA platform must agree to abide by at least the terms of the EULA, which is "a limited, non-exclusive and non-transferable license" to the CygNet® SCADA platform. Ex. 1 § 1.

35.     No Iron-IQ employee or representative had authorization to access the CygNet®
SCADA platform on behalf of Iron-IQ. However, Iron-IQ employees or representatives did in fact
access the CygNet® SCADA platform, thus triggering the contractual obligations of the EULA.

36.     Under the EULA, any person who engages in any of the following actions,
"download, install and use" of the CygNet® SCADA platform, must do so "*solely* for [its] internal
business purposes." *Id.* (emphasis added).

37.     Iron-IQ breached its obligations under the EULA by downloading, installing, and
using the CygNet® SCADA platform for purposes that were not Iron-IQ's internal business
purposes, including the purpose of migrating Weatherford's customers from the CygNet®
SCADA platform to Iron-IQ's SCADA software and to copy front-end and scripts found in the
CygNet® SCADA platform.

38.     As a direct and proximate result of Iron-IQ's breaches of the EULA for the
CygNet® SCADA platform, Weatherford has been injured, including through the loss of business
from customers, and faces continued irreparable injury.

39.     Under the terms of the EULA, Iron-IQ agreed that breach or threatened breach of
the EULA causes Weatherford irreparable harm and entitles Weatherford to equitable remedies
such as a restraining order or injunction in addition to monetary damages:

> 15. EQUITABLE REMEDIES. Licensee acknowledges and agrees that a breach or
> threatened breach by you of any of your obligations under this EULA would cause
> Licensor irreparable harm for which monetary damages would not be an adequate
> remedy and that, in the event of such breach or threatened breach, Licensor will be
> entitled to equitable relief, including in a restraining order, an injunction, specific
> performance and any other relief that may be available from any court of competent
> jurisdiction, without any requirement to post a bond or other security, or to prove
> actual damages or that monetary damages are not an adequate remedy. Such
> remedies are not exclusive and are in addition to all other remedies that may be
> available at law, in equity or otherwise.

Ex. 1.

40.     Under the EULA Iron-IQ agreed that in an action arising under the EULA Weatherford is entitled to recover attorney's fees, expenses, and costs in addition to monetary damages:

> 16.3 Attorneys' Fees. In the event Licensor institutes suit to enforce any right or obligation against you arising from or incidental to this EULA, Licensor shall be entitled to recover, in addition to any damages or other relief awarded to it, reasonable attorney's fees, court costs, fees of testifying experts or consultants, and other expenses related thereto.

## COUNT II
### (Misappropriation of Trade Secrets under DTSA)

41.     Weatherford incorporates by reference the foregoing allegations as if fully set forth herein.

42.     Weatherford's CygNet® SCADA platform contains unique and valuable information, including layouts and interfaces for viewing and interacting with customer data and customer-specific scripts for controlling and interacting with customer-specific devices, proprietary polling engine, and access programming interfaces for extracting data (collectively "Trade Secrets").

43.     These Weatherford Trade Secrets incorporated in the CygNet® SCADA platform are confidential, proprietary, not generally known to the public, and constitute trade secrets within the meaning of the DTSA.

44.     Weatherford has taken reasonable measures to keep this information secret and confidential, including but not limited to password-protecting and limiting access rights to the CygNet® SCADA platform and requiring signatories to the CygNet® SCADA platform to comply with the following restrictions under the EULA:

Licensee shall NOT:

2.1 copy the Software, in whole or in part;

2.2 modify, correct, adapt translate enhance or otherwise create derivative works or improvements of the Software;

2.3 reverse engineer, disassemble, decompile, decode or adapt the Software, or otherwise attempt to derive or gain access to the source code of the Software, in whole or in part;

2.4 lend, sell, sublicense, assign, distribute, publish, transfer or otherwise make the Software (or any features or functionality of the Software) available to any third party for any reason, including by making the Software available on a network where it is capable of being accessed by more than one device at any time;

2.5 reproduce, remove, delete, alter, obscure translate, combine, supplement or otherwise change any trademarks, copyright notices, warranties, disclaimers, or intellectual property rights, proprietary rights or other symbols, notices, marks or serial numbers on or relating to any copy of the Software or the Documentation, including any copy thereof;

2.6 remove, disable, circumvent or otherwise create or implement any workaround to any copy protection, rights management or security features in or protecting the Software, including, without limitation, attempting to circumvent any applicable configuration or usage limitations through any means or using virtualization, multiplexing, branching, or pooling technology to effectively extend the number of instances of the Software on your Device or the number of end users having access to the Software's functionality;

2.7 install the Software on, or configure the Software or your other systems to make the Software (including its functionality), accessible through, any network that is connected to the public internet, unless the Software was specifically designed (as confirmed in its Documentation) to be accessed by users via the public internet; or

2.8 unless specifically contemplated by the Software and Documentation, use the Software in, or in association with, the design, construction, maintenance or operation of any hazardous environments or systems, including any power generation systems; aircraft navigation or communication systems, air traffic control systems or any other transport management systems; safety-critical applications, including medical or life-support systems, vehicle operation applications or any police, fire or other safety response systems; and military or aerospace applications, weapons systems or environments.

45.    Likewise, Weatherford's standard Master Software License and Services Agreement covering the CygNet® SCADA platform requires customers to comply with many restrictions and security measures to maintain the confidential nature of Weatherford's Trade

Secrets. For example, licensees must protect the confidentiality of the CygNet® SCADA platform and avoid unauthorized access to the platform:

> **Licensee Security Measures.** Licensee shall maintain appropriate administrative, technical, and physical safeguards to protect the confidentiality and integrity of the Software and avoid the unauthorized access to, disclosure, use, destruction, loss or alteration of the Software (collectively, the "Data Safeguards"). Licensee further agrees that it will monitor and test its Data Safeguards from time to time and adjust them in light of the results of any relevant testing or monitoring.

*See* Ex. 4 (Weatherford's standard Master Software License and Services Agreement covering the CygNet® SCADA platform) at Section 8.2.

46.     These Weatherford Trade Secrets derive independent economic value from not being generally known and not being readily ascertainable by proper means by persons other than Weatherford or Weatherford licensees who are obligated to maintain the confidentiality of such Trade Secrets.

47.     Weatherford developed its Trade Secrets over many years and at great expense.

48.     Iron-IQ, by engaging in and continuing to engage in the conduct and activities described herein, has violated the DTSA through its improper acquisition, disclosure, and use of Weatherford Trade Secrets, which constitutes actual and threatened misappropriation.

49.     Iron-IQ acquired, has actually used, plans to use, and/or will inevitably use Weatherford Trade Secrets. Further, Iron-IQ has actually retained and/or threatens to retain, and/or has actually disclosed and/or threatens to disclose, the Weatherford Trade Secrets.

50.     Given that Iron-IQ and Weatherford are direct competitors, it is inevitable and/or threatened that Iron-IQ will use and/or disclose Weatherford's Trade Secrets to create, enhance, and modify Iron-IQ's competing SCADA platform.

51.     Iron-IQ knew or had reason to know, and continues to know or have reason to know, that Weatherford considers this information trade secret or confidential and that it was misappropriated without Weatherford's consent.

52.     Iron-IQ obtained unauthorized access to Weatherford's CygNet® SCADA platform by using third party or unauthorized login credentials.

53.     Iron-IQ used its unauthorized access to examine Weatherford's CygNet® SCADA platform and obtain copies of Weatherford's CygNet® SCADA platform in order to obtain Weatherford's Trade Secrets.

54.     Upon information and belief, Iron-IQ has used Weatherford's Trade Secrets in the development of Iron-IQ's competing SCADA platform, as a competitor of Weatherford's CygNet® SCADA platform, and such use was, and continues to be, without authorization by Weatherford.

55.     As a direct and proximate result of Iron-IQ's misappropriation of Weatherford's Trade Secrets, Weatherford has been injured, including through the loss of business from customers of Weatherford's CygNet® SCADA platform, and faces continued irreparable injury.

56.     Weatherford has and will continue to suffer irreparable harm as a result of Iron-IQ's unlawful conduct. Iron-IQ's activities will result in a substantial loss of business for Weatherford, now and in the future.

57.     The actions of Iron-IQ were willful, malicious, and intended to injure Weatherford and its business.

58.     As a direct and proximate result of Iron-IQ's misappropriation, Weatherford has suffered irreparable harm, injuries, and damages, and will continue to suffer irreparable harm, injury, and damages, including but not limited to loss of relevant market share, injury to business

reputation and goodwill, loss of profits, and attorneys' fees and costs. Iron-IQ has gained an unfair competitive advantage and other unjust enrichment through the acquisition and misuse of Weatherford's Trade Secrets.

59.     Under the DTSA, Weatherford is entitled to and requests an award of damages in its favor for actual loss caused by the misappropriation, damages for all unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss, and/or damages measured by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of Weatherford's trade secrets.

60.     Under the DTSA, Weatherford is entitled to and requests exemplary damages in an amount not more than two times Weatherford's actual damages, plus reasonable attorneys' fees.

## <u>COUNT III</u>
### (Misappropriation of Trade Secrets under Texas Uniform Trade Secrets Act ("TUTSA"))

61.     Weatherford incorporates by reference the foregoing allegations as if fully set forth herein.

62.     This cause of action is brought by Weatherford against Iron-IQ under the TUTSA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001–134A.008.

63.     Weatherford's Trade Secrets also constitute constitutes trade secrets under Texas Civil Practice and Remedies Code section 134A.002(6).

64.     Iron-IQ accessed and acquired Weatherford's Trade Secrets by improper means.

65.     Iron-IQ's acquisition and use of Weatherford's Trade Secrets in competition with Weatherford, without license or other authority, is a misappropriation of Weatherford's Trade Secrets under TUTSA. Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001–134A.008.

66.     Because Iron-IQ understands the importance of Weatherford's Trade Secrets, and Iron-IQ has acquired, used or disclosed, or has threatened to use or disclose, Weatherford's Trade

Secrets to benefit itself, Iron-IQ's misappropriation of Weatherford's Trade Secrets is willful and intentional. Therefore, Weatherford is entitled to all actual and exemplary damages resulting from this misappropriation and breach of TUTSA.

67.     Iron-IQ's wrongful acquisition, use and/or disclosure of Weatherford's Trade Secrets has, and will continue to, seriously damage Weatherford in an amount that is not presently ascertainable. Weatherford demands that Iron-IQ be ordered to pay all actual damages, special damages, and consequential damages. Weatherford further demands that Iron-IQ be ordered to pay all reasonable and necessary attorneys' fees incurred by Weatherford in bringing this claim. And because of the egregious nature of Iron-IQ's conduct, Weatherford demands that Iron-IQ be ordered to pay exemplary damages.

## COUNT IV
### (Unfair Competition)

68.     Weatherford incorporates by reference the foregoing allegations as if fully set forth herein.

69.     Weatherford has created many versions of the CygNet® SCADA platform, including the versions misused by Iron-IQ, through extensive time, labor, skill and money. Many of these versions are referenced (though not publicly disclosed) on the CygNet® blog, available at https://www.weatherford.com/blog/cygnet and incorporated by reference here.

70.     Iron-IQ acquired and used the CygNet® SCADA platform in competition with Weatherford, at least by acquiring and using the CygNet® SCADA platform to migrate Weatherford's customers from the CygNet® SCADA platform to Iron-IQ's SCADA software. This acquisition and use gave Iron-IQ a special advantage in that competition, at least because it enabled Iron-IQ to migrate Weatherford's customers from the CygNet® SCADA platform to Iron-

IQ's SCADA software with little or none of the expense incurred by Weatherford in developing the CygNet® SCADA platform.

71.    Iron-IQ's acquisition and use of the CygNet® SCADA platform in competition with Weatherford has caused commercial damage to Weatherford, at least by diverting Weatherford's customers from CygNet® to Iron-IQ's SCADA software and by diminishing the value of the CygNet® SCADA platform to Weatherford, in amounts to be proven at trial.

## COUNT V
### (Harmful Access by Computer)

72.    Weatherford incorporates by reference the foregoing allegations as if fully set forth herein.

73.    Weatherford is the owner of CygNet®, which is stored on and made available to Weatherford customers via a "computer network" or a "computer system" within the meaning of Texas Penal Code §§ 33.01(5), 33.01(8), and 33.02(a).

74.    Iron-IQ violated Texas Penal Code § 33.02(a) by knowingly or intentionally accessing Weatherford's computer network or computer system to download and use CygNet® without the effective consent of Weatherford.

75.    Iron-IQ's violation has injured Weatherford, at least by diverting Weatherford's customers from CygNet® to Iron-IQ's SCADA software.

76.    Iron-IQ's violation has injured Weatherford's property, at least by diminishing the value of CygNet® and its incorporated data.

77.    Texas Civil Practice & Remedies Code § 143.001 provides a civil cause of action for Iron-IQ's violation of Texas Penal Code § 33.02(a).

78.    Under Texas Civil Practice & Remedies Code § 143.002, Weatherford is entitled to its actual damages and reasonable attorney's fees and costs in amounts to be proven at trial.

## COUNT VI
### (Tortious Interference with Contract)

79.     Weatherford incorporates by reference the foregoing allegations as if fully set forth herein.

80.     Weatherford and each of its CygNet® customers are parties to contracts, under which the customer agrees to pay Weatherford for limited, internal use of CygNet®.

81.     Iron-IQ willfully and intentionally interfered with these contracts by inducing at least two Weatherford customers to use CygNet® to migrate from CygNet® to Iron-IQ's SCADA software.

82.     Iron-IQ's interference proximately caused damage or loss to Weatherford, at least in the form of lost revenue from those Weatherford customers, in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Weatherford respectfully requests that this Court enter judgment in its favor and against Iron-IQ, and award Weatherford the following relief:

A.      A temporary restraining order, preliminary injunction and permanent injunction that:

1.      enjoins Iron-IQ from obtaining, disclosing or using any of Weatherford's Confidential Information and Trade Secrets;

2.      requires Iron-IQ to return to Weatherford or destroy all copies of Confidential Information and Trade Secrets (in any tangible or electronic form);

3.      enjoins Iron-IQ from continuing to sell its SCADA product or any other product developed in any part with the use of Weatherford's Confidential

Information and Trade Secrets in competition with Weatherford's CygNet®

SCADA platform;

B.    compensatory damages in an amount to be proven at trial against Iron-IQ;

C.    entry of judgment that this case is exceptional with respect to Iron-IQ;

D.    punitive and exemplary damages in an amount to be proven at trial against Iron-IQ;

E.    attorneys' fees and costs as allowed by law; and

F.    such other and further relief as this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38(b), Plaintiffs request a jury trial of all issues so triable.

Dated: September 12, 2023                     Respectfully submitted,

                                              BAKER & HOSTETLER LLP

                                              *s/ Billy M. Donley*
                                              Billy M. Donley, attorney-in-charge
                                              Texas Bar No. 05977085
                                              811 Main Street, Suite 1100
                                              Houston, Texas 77002
                                              T (713) 751-1600
                                              F (713) 751-1717

                                              Kevin W. Kirsch, of counsel
                                              (*pro hac vice* application pending)
                                              California Bar No. 166184
                                              Ohio Bar No. 81996
                                              Andrew E. Samuels, of counsel
                                              (*pro hac vice* application pending)
                                              Ohio Bar No. 90189
                                              200 Civic Center Drive, Suite 1200
                                              Columbus, Ohio 43215
                                              T (614) 228-1541
                                              F (614) 228-2616

Jared A. Brandyberry, of counsel
(*pro hac vice* application pending)
Ohio Bar No. 88491
Colorado Bar No. 44775
1801 California Street, Suite 4400
Denver, Colorado 80202
T (303) 861-0600
F (303) 861-7805

*Attorneys for Plaintiffs*
*Weatherford U.S., L.P. and*
*Weatherford Technology Holdings, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| WEATHERFORD U.S., L.P.<br>and WEATHERFORD TECHNOLOGY<br>HOLDINGS, LLC,<br><br>  *Plaintiffs*,<br><br>  vs.<br><br>IRON IQ, INC.,<br><br>  *Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. _____ |

## <u>VERIFICATION/DECLARATION OF JAMES L. KURKA</u>

I, James L. Kurka, hereby declare:

1.      I am the Associate General Counsel, Intellectual Property at Weatherford U.S., L.P. ("Weatherford U.S.") and have held that position since January 2023.  I am also the President of Weatherford Technology Holdings, LLC ("Weatherford Tech") and have held that position since January 2023.  I am over twenty-one years of age and of sound mind.  I have never been convicted of a crime.  I am competent to testify and have personal knowledge of the facts stated in Weatherford U.S.'s and Weatherford Tech's (collectively "Weatherford") Verified Complaint and the accompanying Application for Temporary Restraining Order ("TRO Application").

2.      I have read the Verified Complaint and TRO Application and the facts stated therein are true and correct.

3.      Attached as Ex. 1 to the Verified Complaint is a true and correct copy of the End-User License Agreement ("EULA") for Weatherford's CygNet® SCADA platform.

4.      Attached as Ex. 2 to the Verified Complaint is a true and correct copy of the August 14, 2023 Letter from James Kurka, Associate General Counsel, Intellectual Property at Weatherford, to Michael Ligrani, CEO at Iron-IQ.

5.      Attached as Ex. 3 to the Verified Complaint is a true and correct copy of the August 21, 2023 Letter from Andrew D. Skale of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ to Kevin W. Kirsch of Baker Hostetler LLP on behalf of Weatherford.

6.      Attached as Ex. 4 to the Verified Complaint is a true and correct copy of Weatherford's standard Master Software License and Services Agreement covering the CygNet® SCADA platform.

7.      Attached as Ex. 5 to the Verified Complaint is a true and correct copy of the August 23, 2023 Correspondence from Kevin W. Kirsch of Baker Hostetler LLP on behalf of Weatherford to Andrew D. Skale of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ.

8.      Attached as Ex. 6 to the Verified Complaint is a true and correct copy of the August 30, 2023 Correspondence from Kevin W. Kirsch of Baker Hostetler LLP on behalf of Weatherford to Andrew D. Skale of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ.

9.      Attached as Ex. 7 to the Verified Complaint is a true and correct copy of the September 1, 2023 Correspondence from Andrew D. Skale of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ to Kevin W. Kirsch of Baker Hostetler LLP on behalf of Weatherford.

10.     Attached as Ex. 8 to the Verified Compaint is a true and correct copy of the August 25, 2023 email from Kara Cormier, on behalf of Andrew D. Skale, both of of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. on behalf of Iron-IQ, to Kevin W. Kirsch of Baker Hostetler LLP on behalf of Weatherford.

My name is James L. Kurka, my date of birth is May 19, 1973, and my business address is 2000 St. James Place, Houston, Texas 77056.  I declare under the penalty of perjury that the foregoing is trued and correct.

Executed in Harris County, Texas, on 12th of September, 2023.

James L. Kurka