IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEATHERFORD U.S., LP and | § | |
| WEATHERFORD TECHNOLOGY | § | |
| HOLDINGS, LLC | § | |
| | § | CIVIL ACTION NO. 23-cv-3416 |
| VS | § | **JURY DEMANDED** |
| | § | |
| IRON IQ, INC. | § | |

**PLAINTIFFS WEATHERFORD U.S., LP AND
WEATHERFORD TECHNOLOGY HOLDINGS, LLC'S
MOTION FOR TEMPORARY RESTRAINING ORDER**

Under Fed. R. Civ. P. 65(b)(1), Plaintiffs Weatherford U.S., L.P. and Weatherford Technology Holdings (collectively "Weatherford") move for a temporary restraining order that:

1.  enjoins Defendant Iron IQ, Inc. ("Iron-IQ") from obtaining, retaining, disclosing or using any of Weatherford's confidential information and trade secrets, in any tangible or electronic form, in: (a) Weatherford's CygNet® supervisory control and data acquisition ("SCADA") platform, (b) any derivative works of CygNet®, (c) any migration and conversion tools developed utilizing CygNet®, and (d) any improvements to CygNet®; and

2.  requires Iron-IQ to return to Weatherford or destroy all copies of confidential information and trade secrets, in any tangible or electronic form, in: (a) CygNet®, (b) any derivative works of CygNet®, (c) any migration and conversion tools developed utilizing CygNet®, and (d) any improvements to CygNet®.

Weatherford's brief in support of this motion follows.

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION .................................................................................................1

II. FACTS .................................................................................................................1

   A.  Weatherford provides access to CygNet® only under a EULA with use
       limitations and with Texas law and venue provisions. ...........................1

   B.  Weatherford discovers—and Iron-IQ admits to—Iron-IQ's unauthorized
       access to CygNet®..................................................................................3

   C.  Iron-IQ continues its unauthorized access and use, including by migrating
       customers away from CygNet®, and demands that Weatherford "cease and
       desist" from communicating with Iron-IQ..............................................4

III. ARGUMENT .......................................................................................................5

   A.  Weatherford is likely to succeed on the merits.......................................5

       1.  Breach of contract.........................................................................6

       2.  Trade secret misappropriation.......................................................7

   B.  Weatherford is likely to suffer irreparable harm without a TRO............9

   C.  The balance of equities favors a TRO....................................................11

   D.  The public interest favors a TRO...........................................................12

IV. CONCLUSION...................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Barbers Hill Indep. Sch. Dist.*,
 479 F. Supp. 3d 511 (S.D. Tex. 2020) ......................................................................5

*Benisek v. Lamone*,
 138 S. Ct. 1942 (2018) .............................................................................................5

*Beture v. Samsung Elecs. Am., Inc.*,
 No. 17-5757, 2018 WL 4259845 (D.N.J. July 18, 2018) ..........................................6

*Broker Genius, Inc. v. Volpone*,
 313 F. Supp. 3d 484 (S.D.N.Y. 2018) .....................................................................12

*CGC Royalty Invs. I, LLC v. Order Simplicity, LLC*,
 No. 3:18-CV-0711, 2018 WL 3589085 (N.D. Tex. June 4, 2018) ...........................10

*Clean Energy v. Trillium Transp. Fuels, LLC*,
 No. 19-244, 2022 WL 4451865 (S.D. Tex. Aug. 24, 2022) .......................................7

*Cox Operating, LLC v. Wells Fargo, N.A.*,
 No. 4:19-CV-1889, 2021 WL 5856334 (S.D. Tex. Nov. 5, 2021) .............................9

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
 710 F.3d 579 (5th Cir. 2013) ....................................................................................5

*FMC Corp. v. Varco Int'l, Inc.*,
 677 F.2d 500 (5th Cir. 1982) ..................................................................................11

*Garza v. Starr Cnty.*,
 309 F. Supp. 3d 454 (S.D. Tex. 2018) .......................................................................5

*Gates v. Cook*,
 376 F.3d 323 (5th Cir. 2004) ..................................................................................10

*Hassani v. Napolitano*,
 No. 3:09-CV-1201, 2009 WL 2044596 (N.D. Tex. July 15, 2009)............................5

*Helling v. McKinney*,
 509 U.S. 25 (1993)....................................................................................................9

*Henson Patriot Ltd. v. Medina*,
 No. 14-CV-534, 2014 WL 4546973 (W.D. Tex. Sept. 11, 2014)............................10

*Hughes v. Age Indus., Ltd.*,
    No. 04-16-00693-CV, 2017 WL 943423 (Tex. App. Mar. 8, 2017) ....................................10

*Humana, Inc. v. Jacobson*,
    804 F.2d 1390 (5th Cir. 1986) ......................................................................................9, 10

*Keurig Dr Pepper Inc. v. Chenier*,
    No. 4:19-CV-505, 2019 WL 3958154 (E.D. Tex. Aug. 22, 2019) .....................................13

*KeyCorp v. Holland*,
    No. 3:16-CV-1948, 2017 WL 345645 (N.D. Tex. Jan. 24, 2017) .....................................11

*La O Munoz v. Wolf*,
    No. 4:20-CV-2206, 2020 WL 13556132 (S.D. Tex. July 6, 2020) .....................................9

*Luxottica of Am., Inc. v. Brave Optical, Inc.*,
    No. 4:22-CV-244, 2023 WL 4589222 (E.D. Tex. July 18, 2023) .....................................10

*Merchants Bonding Co. v. Burnside*,
    No. 4:22-CV-3651, 2023 WL 4140455 (S.D. Tex. June 21, 2023)....................................12

*Metallurgical Indus., Inc. v. Fourtek*,
    790 F.2d 1195 (5th Cir. 1986) ........................................................................................13

*Miracle Appearance Reconditioning Specialists Int'l, Inc. v. Harris*,
    No. 4:07-CV-524, 2007 WL 9718310 (N.D. Tex. Oct. 9, 2007).......................................10

*Monocoque Diversified Interests, LLC v. USA Jet Airlines, Inc.*,
    No. 21-CV-00956, 2022 WL 2919350 (W.D. Tex. July 25, 2022) .....................................7

*Picker Int'l, Inc. v. Blanton*,
    756 F. Supp. 971 (N.D. Tex. 1990) ..................................................................................13

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*,
    259 F. Supp. 2d 531 (N.D. Tex. 2003) .............................................................................12

*Reingold v. Swiftships, Inc.*,
    126 F.3d 645 (5th Cir. 1997) ............................................................................................9

*ResMan, LLC v. Karya Prop. Mgmt., LLC*,
    No. 4:19-CV-00402, 2021 WL 3403935 (E.D. Tex. Aug. 4, 2021)....................................8

*Texas v. Seatrain Int'l, S.A.*,
    518 F.2d 175 (5th Cir. 1975) ............................................................................................5

*Texas v. United States*,
    524 F. Supp. 3d 598 (S.D. Tex. 2021) ..............................................................................5

*Travelers Cas. & Sur. Co. of Am. v. Padron*,
No. 5:15-CV-200, 2017 WL 9360906 (W.D. Tex. Aug. 2, 2017)..........................................11

*Villarreal v. Wells Fargo Bank, N.A.*,
814 F.3d 763 (5th Cir. 2016) .................................................................................................6

*Well Cell Glob. LLC v. Calvit*,
No. 22-3062, 2023 WL 175193 (S.D. Tex. Jan. 12, 2023)........................................................8

*Wright v. Christian & Smith*,
950 S.W.2d 411 (Tex. App. 1997)..........................................................................................6

**Statutes**

18 U.S.C. § 1836(b)(1) .........................................................................................................7

18 U.S.C. § 1839(3) ..........................................................................................................7, 8

18 U.S.C. § 1839(5) .............................................................................................................9

Tex. Civ. Prac. & Rem. Code § 134A.002(3)........................................................................9

Tex. Civ. Prac. & Rem. Code § 134A.002(6).....................................................................7, 8

Tex. Civ. Prac. & Rem. Code § 134A.004(a)........................................................................7

**Rules**

Fed. R. Civ. P. 5(b)(2)(E) ...................................................................................................15

Fed. R. Civ. P. 65(b) ...........................................................................................................5

Fed. R. Civ. P. 65(b)(1)(B)..................................................................................................15

# I.    INTRODUCTION

Weatherford owns the CygNet® supervisory control and data acquisition ("SCADA") platform, an industry-leading oilfield software system that captures, manages, and seamlessly integrates data from downhole sensors, electronic flow measurement devices, wellheads, surface facilities, plants, and pipelines. CygNet® incorporates Weatherford's trade secrets and confidential information, which is why Weatherford requires an End User License Agreement ("EULA") from every CygNet® user that limits their use of CygNet® to "*internal* business purposes" only. (Verified Compl., Ex. 1, §§ 1, 1.1) (emphasis added). Unauthorized use of CygNet®, users agree, would cause Weatherford irreparable harm. (*Id.* § 15.)

In breach of the EULA, Iron-IQ has accessed and used unauthorized copies of CygNet® for unauthorized purposes, including to migrate Weatherford's customers away from CygNet®. With possession of these unauthorized copies, Iron-IQ is in a position to use Weatherford's trade secrets to develop Iron-IQ's SCADA platform, to develop customer migration tools, to migrate customer data, and to compete against Weatherford. And Iron-IQ is preventing Weatherford from discovering the extent of Iron-IQ's misconduct: when Weatherford communicated about it, Iron-IQ demanded that Weatherford "cease and desist" from further communication about the matter. (*Id.* ¶ 31, Ex. 7.) Iron-IQ has left Weatherford no choice but to move for a TRO to protect its contract and intellectual property rights and to prevent irreparable harm. For the following reasons, Weatherford's motion should be granted.

# II.   FACTS

## A.    Weatherford provides access to CygNet® only under a EULA with use limitations and with Texas law and venue provisions.

Weatherford, based in Houston, Texas, offers its CygNet® SCADA platform specifically for the oil and gas industry to allow operators to process, manage, and respond to data collected

from a variety of sources—including downhole sensors, electronic flow measurement (EFM) devices, wellheads, surface facilities, plants, and pipelines. (Verified Compl. ¶¶ 6–7, 18.) Through years of research and development, Weatherford has refined the user interface of the CygNet® SCADA platform to optimize how customers view and interact with their data. (*Id*. ¶ 19.) For each customer, Weatherford customizes the CygNet® SCADA platform to interact with customer-specific devices and specifications. This customization is done through scripts that allow data to be pulled and collected from customer devices (e.g., sensors, electronic flow measurement (EFM) devices) and that allow customer devices to be activated by users of the software. (*Id*. ¶ 20.)

Iron-IQ, based in Grand Junction, Colorado, offers a competing SCADA platform and has contacts with the State of Texas and this District related to its conduct with the Iron-IQ SCADA platform. (*Id*. ¶¶ 8, 14–17.) Iron-IQ admitted that it accessed the CygNet® SCADA platform (*see id*. ¶ 25, Ex. 3, 8) and therefore agreed to be bound by the EULA for the CygNet® SCADA platform, which provided Iron-IQ with "a *limited*, non-exclusive and non-transferable license" to, among other things, "download, install, and use" CygNet® *only* for Iron-IQ's "*internal* business purposes." (*Id.*, Ex. 1, §§ 1, 1.1) (emphasis added). The EULA also includes Texas law and venue provisions:

> 16.1 Governing Law and Venue. This EULA shall be governed, construed and interpreted in accordance with the laws of the State of Texas, without regard to any choice of laws or conflict of laws provisions which would direct the application of the laws of another jurisdiction. Venue for any litigation filed with respect to this EULA shall be exclusive in the courts, state or federal, sitting in Houston, Harris County, Texas.

(*Id.* § 16.1.) Accordingly, this Court has subject matter jurisdiction over this action (*see* Verified Compl. ¶¶ 9–13) and personal jurisdiction and proper venue over Iron-IQ (*see id.* ¶¶ 14–17).

**B. Weatherford discovers—and Iron-IQ admits to—Iron-IQ's unauthorized access to CygNet®.**

Iron-IQ's business model is focused on moving customers from legacy SCADA systems to Iron-IQ's competing product line. (*Id*. ¶ 21.) Weatherford recently learned that Iron-IQ employees were downloading versions of the CygNet® SCADA platform by using credentials from third-party licensees. (*Id*. ¶ 22.) Iron-IQ does not have, and has never had, a license to access the CygNet® SCADA platform. (*Id*. ¶ 23.) Accordingly, Weatherford immediately reached out to Iron-IQ on August 14, 2023, and demanded that Iron-IQ cease its access to the CygNet® SCADA platform, destroy all improperly obtained copies of the CygNet® SCADA platform, and explain why Iron-IQ had improperly accessed the CygNet® SCADA platform. (*See id.* ¶ 24, Ex. 2.)

Iron-IQ's counsel responded on August 21, 2023 and freely admitted that Iron-IQ had accessed the CygNet® SCADA platform, but claimed such use was proper because Iron-IQ was using a 3-day trial version of the software. (*Id.* ¶ 25.) Iron-IQ admitted to using what it said was a 3-day trial at least two times, for a total of 6 days. (*Id.* ¶ 25, Ex. 3, 8.) Iron-IQ failed to acknowledge that a "trial version" is only accessible to existing CygNet® SCADA platform licensees, and is not available to any unlicensed party. (*Id.* ¶ 26.) Any person accessing any version of the CygNet® SCADA platform must execute a negotiated written license agreement before access is allowed. (*Id.*) Access cannot occur without login information, which is only provided after such written license agreement is executed. (*Id.*) Iron-IQ has neither entered into such a written license agreement nor received login information to allow for proper access to the CygNet® SCADA platform. (*Id.*) Accordingly, Iron-IQ's August 21, 2023 letter is an admission that Iron-IQ knowingly accessed the CygNet® SCADA platform without authorization, and thus is an admission of liability for Weatherford's causes of action. (*Id.* ¶ 27.)

**C.      Iron-IQ continues its unauthorized access and use, including by migrating customers away from CygNet®, and demands that Weatherford "cease and desist" from communicating with Iron-IQ.**

On August 18, 2023, *after* receiving Weatherford's initial letter on August 14, 2023, Iron-IQ's employee since 2019, Damon Baillie, once again accessed the CygNet® SCADA platform without proper authorization. (*Id.* ¶ 28.) On August 18, 2023, Mr. Baillie downloaded CygNet® SCADA platform version 9.6 using login credentials from Caerus Oil & Gas, a company he worked at from 2017 to 2019. *Id.* Caerus Oil & Gas, a current customer of Weatherford, had been using the CygNet® SCADA platform version 9.6 since at least February 2023. (*Id.* ¶ 29.) There is no legitimate business purpose related to Caerus Oil & Gas for Mr. Baillie to be downloading a version of the CygNet® SCADA platform that is already in use. (*Id.*) Weatherford believes that Mr. Baillie downloaded CygNet® SCADA platform version 9.6 in order to at least improperly assist in migrating other Weatherford customers operating under CygNet® SCADA platform version 9.6 to Iron-IQ. (*Id.*)

In correspondence on August 23, 2023, and again on August 30, 2023, Weatherford's counsel attempted to obtain information from Iron-IQ about Iron-IQ's unauthorized access to Weatherford's CygNet® SCADA platform to understand the extent and the purpose behind Iron-IQ's conduct. (*Id.* ¶ 30, Ex. 5–6.) In response to Weatherford's inquiries about Iron-IQ's unauthorized access to Weatherford's CygNet® SCADA platform, Iron-IQ refused to provide the requested information and instead demanded that Weatherford's counsel "cease and desist" from further communication about Iron-IQ's conduct. (*Id.* ¶ 31, Ex. 7.) Accordingly, Weatherford believes that Iron-IQ remains in possession of one or more unauthorized copies of the CygNet® SCADA platform and is in a position to use them to develop its platform, to develop migration tools, to migrate customer data, and to compete against Weatherford. (*Id.* ¶ 32.)

## III.    ARGUMENT

This Court should exercise its power under Fed. R. Civ. P. 65(b) to issue Weatherford's requested temporary restraining order. "A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief," so Weatherford is entitled to a TRO as long as it meets the "four elements for obtaining [a] preliminary injunction." *Garza v. Starr Cnty.*, 309 F. Supp. 3d 454, 456 (S.D. Tex. 2018) (citing *Hassani v. Napolitano*, No. 3:09-CV-1201, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009)). Those four elements are: "(1) 'a likelihood of success on the merits,' (2) 'that [Weatherford] is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'that the balance of equities tips in [Weatherford's] favor,' and (4) 'that [a TRO] is in the public interest.'" *Texas v. United States*, 524 F. Supp. 3d 598, 651 (S.D. Tex. 2021) (quoting *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018)). These four elements do not have "a fixed quantitative value," but rather are analyzed on "a sliding scale . . . which takes into account the intensity of each in a given calculus." *Id.* (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). No matter how they are weighted, each element favors a TRO here.

### A.    Weatherford is likely to succeed on the merits.

Weatherford is likely to succeed on the merits, especially on its claims for breach of contract under Texas law and for trade secret misappropriation under federal and Texas law. "To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). "When the plaintiff has brought multiple causes of action, he need only present a prima facie case on one of them." *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 519 (S.D. Tex. 2020). Weatherford can present a prima facie case on all of its claims, including its contract and trade secret claims.

## 1. Breach of contract

Weatherford is likely to succeed on its claim for breach of contract. The contract at issue, the EULA, is governed by Texas law. (Verified Compl., Ex. 1, § 16.1.) Under Texas law, a claim for breach of contract consists of four elements: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App. 1997)). Weatherford has made a prima facie showing of each element.

First, the EULA is a valid contract between Weatherford and Iron-IQ. EULAs are generally enforceable under Texas law. *See, e.g.*, *Beture v. Samsung Elecs. Am., Inc.*, No. 17-5757, 2018 WL 4259845, at *6–7 (D.N.J. July 18, 2018) (holding EULA enforceable under Texas, New York, and New Jersey law). Iron-IQ accepted the EULA by logging into CygNet®. (Verified Compl. ¶¶ 14, 34–35.)

Second, Weatherford performed under the EULA by providing Iron-IQ with "a *limited*, non-exclusive and non-transferable license" to, among other things, "download, install, and use" CygNet® *only* for Iron-IQ's "*internal* business purposes." (Verified Compl., Ex. 1, §§ 1, 1.1) (emphasis added).

Third, Iron-IQ breached the EULA by, among other things, downloading, installing, and using CygNet® for purposes other than "internal business purposes." These unauthorized, non-internal business purposes include migrating Weatherford's customers from CygNet® to Iron-IQ's SCADA platform. (Verified Compl. ¶ 29.)

And fourth, Iron-IQ's breaches damaged Weatherford. In the EULA, the parties agreed "that a breach or threatened breach by [Iron-IQ] of any of [Iron-IQ's] obligations under this EULA

would cause [Weatherford] irreparable harm." (Verified Compl., Ex. 1 § 15.) And in the Verified Complaint, Weatherford pleads that Iron-IQ's breaches injured Weatherford, "including through the loss of business from customers." (Verified Compl. ¶¶ 38, 55.) Nothing more is required to make a prima facie allegation of damages. *See Monocoque Diversified Interests, LLC v. USA Jet Airlines, Inc.*, No. 21-CV-00956, 2022 WL 2919350, at *4 (W.D. Tex. July 25, 2022) (finding "contractual[] agree[ment]" of irreparable harm and allegation of "disclosure of confidential information" sufficient to plead damage from breach of contract).

## 2. Trade secret misappropriation

Weatherford is also likely to succeed on its claims for trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA"). "The statutory language of both DTSA and TUTSA [is] virtually identical," so "courts generally analyze them together." *Clean Energy v. Trillium Transp. Fuels, LLC*, No. 19-244, 2022 WL 4451865, at *2 (S.D. Tex. Aug. 24, 2022). Weatherford's claims under these statutes "require only two elements: (1) the existence of a trade secret; and (2) misappropriation." *Id.* (citing 18 U.S.C. § 1836(b)(1); Tex. Civ. Prac. & Rem. Code § 134A.004(a)). Weatherford has made a prima facie showing of both elements.

**Weatherford's trade secrets:** Weatherford has made a prima facie showing that it owns trade secrets. DTSA and TUTSA broadly define "trade secret" to include "all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers." Tex. Civ. Prac. & Rem. Code § 134A.002(6); *see also* 18 U.S.C. § 1839(3) (nearly identical definition). A trade secret may be "tangible or intangible," and it may be "stored,

compiled, or memorialized physically, electronically, graphically, photographically, or in writing." *Id.* To maintain trade secret protection, the owner must take "reasonable measures under the circumstances to keep the information secret" and the information must "derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.*

Weatherford's trade secrets meet this definition. Its trade secrets include "layouts and interfaces for viewing and interacting with customer data and customer-specific scripts for controlling and interacting with customer-specific devices, proprietary polling engine, and access programming interfaces for extracting data." (Verified Compl. ¶ 42.) These items qualify at least as "business" information, "technical" information, a "program," or "code." *See* 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6).

Weatherford has made a prima facie showing that it took reasonable measures under the circumstances to keep its information secret. The measures need only be "reasonable under the circumstances," and "absolute secrecy" is not required. *ResMan, LLC v. Karya Prop. Mgmt., LLC*, No. 4:19-CV-00402, 2021 WL 3403935, at *7 (E.D. Tex. Aug. 4, 2021). Reasonable measures may be "exemplified by the nondisclosure agreements it required" before disclosing the trade secrets. *Well Cell Glob. LLC v. Calvit*, No. 22-3062, 2023 WL 175193, at *7 (S.D. Tex. Jan. 12, 2023). Weatherford meets this standard by, for example, "password-protecting and limiting access rights to the CygNet® SCADA platform" and requiring CygNet® users to enter confidentiality agreements. (Verified Compl. ¶¶ 44–45, Ex. 1, 4.)

Weatherford has further made a prima facie showing that its trade secrets derive independent economic value from not being generally known or readily ascertainable. One way to

establish independent economic value is by showing "the money and time invested by the plaintiff in making the trade secret." *Cox Operating, LLC v. Wells Fargo, N.A.*, No. 4:19-CV-1889, 2021 WL 5856334, at *7 (S.D. Tex. Nov. 5, 2021) (citing *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 650 (5th Cir. 1997)). And here, Weatherford "developed its Trade Secrets over many years and at great expense." (Verified Compl. ¶ 47.)

**Iron-IQ's misappropriation:** Weatherford has also made a prima facie showing that Iron-IQ misappropriated Weatherford's trade secrets. "Misappropriation" includes "acquisition," "disclosure," or "use" of a trade secret by "improper means." 18 U.S.C. § 1839(5); Tex. Civ. Prac. & Rem. Code § 134A.002(3). Iron-IQ has at least acquired and used Weatherford's trade secrets by improper means. Iron-IQ improperly *acquired* the trade secrets when it unauthorizedly "download[ed] versions of the CygNet® SCADA platform by using credentials from third-party licensees." (Verified Compl. ¶ 22.) For example, Iron-IQ employee Damon Baillie downloaded CygNet® using login credentials from his former employer, Caerus Oil & Gas. (*Id.* ¶¶ 28–29.) Iron-IQ also improperly *used* the trade secrets when it used them for unauthorized, non-internal business purposes, including migration of Weatherford's customers from CygNet® to Iron-IQ's SCADA platform. (Verified Compl. ¶¶ 5, 29, 32, 37, 41, 48–50, 54.)

For all these reasons, Weatherford is likely to succeed on the merits of its trade secret misappropriation claims under DTSA and TUTSA.

### B. Weatherford is likely to suffer irreparable harm without a TRO.

Weatherford is likely to suffer irreparable harm without a TRO. "A party seeking immediate injunctive relief need only show a 'significant threat' of 'imminent' injury." *La O Munoz v. Wolf*, No. 4:20-CV-2206, 2020 WL 13556132, at *7 (S.D. Tex. July 6, 2020) (quoting *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986)). "However, a party need not show that the threatened harm has already occurred" or "that the harm is inevitable." *Id.* (citing *Helling*

*v. McKinney*, 509 U.S. 25, 33 (1993); *Gates v. Cook*, 376 F.3d 323, 339 (5th Cir. 2004); *Humana*, 804 F.2d at 1394). Weatherford meets this permissive standard on its contract claim and on its trade secret claims.

**Breach of contract:** "[A] contractual provision declaring irreparable harm . . . is good evidence to support irreparable harm." *Henson Patriot Ltd. v. Medina*, No. 14-CV-534, 2014 WL 4546973, at *4–5 (W.D. Tex. Sept. 11, 2014); *accord Luxottica of Am., Inc. v. Brave Optical, Inc.*, No. 4:22-CV-244, 2023 WL 4589222, at *13 (E.D. Tex. July 18, 2023); *Miracle Appearance Reconditioning Specialists Int'l, Inc. v. Harris*, No. 4:07-CV-524, 2007 WL 9718310, at *3 (N.D. Tex. Oct. 9, 2007). When such a provision is paired with evidence of "lost clients," the harm "is the 'epitome' of irreparable." *Henson*, 2014 WL 4546973, at *5.

That is the case here. In the EULA, Weatherford and Iron-IQ agreed "that a breach or threatened breach by [Iron-IQ] of any of [Iron-IQ's] obligations under this EULA would cause [Weatherford] irreparable harm for which monetary damages would not be an adequate remedy." (Verified Compl., Ex. 1, § 15.) Weatherford has already lost clients who Iron-IQ migrated from CygNet® by using unauthorized copies of CygNet®. (Verified Compl. ¶¶ 37–38.) And given the extent of Iron-IQ's unauthorized logins to CygNet® (*see id.* ¶¶ 26–29), "the extent of the lost business is unknown for the past and future." *Henson*, 2014 WL 4546973, at *4. For all these reasons, Iron-IQ's breaches of contract are likely to cause irreparable harm to Weatherford without a TRO.

**Trade secret misappropriation:** "To show irreparable harm for misappropriation of trade secrets under Texas law, a movant need show only that 'the defendant possesses the trade secrets and is in a position to use them.'" *CGC Royalty Invs. I, LLC v. Order Simplicity, LLC*, No. 3:18-CV-0711, 2018 WL 3589085, at *3 (N.D. Tex. June 4, 2018) (quoting *Hughes v. Age Indus., Ltd.*,

No. 04-16-00693-CV, 2017 WL 943423, at *5 (Tex. App. Mar. 8, 2017)). Although this rule refers to "trade secrets" in the plural, "[i]t is not the number of trade secrets taken that determines whether the threat of irreparable harm exists." *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir. 1982). "The fact that a single trade secret may be disclosed is enough." *Id.*

Weatherford exceeds this standard. On information and belief, Iron-IQ remains in possession of one or more unauthorized copies of CygNet®, which incorporates Weatherford's trade secrets. (Verified Compl. ¶ 2, 24.) With possession of these unauthorized copies, Iron-IQ is in a position to use Weatherford's trade secrets to develop its SCADA platform, to develop customer migration tools, to migrate customer data, and to compete against Weatherford. (*Id.*) Any of these uses would constitute irreparable harm.

### C.     The balance of equities favors a TRO.

Viewed through either Weatherford's breach of contract claim or Weatherford's trade secret misappropriation claims, the balance of equities favors a TRO.

**Breach of contract:** The balance of equities favors a TRO because Weatherford's requested TRO would not "impose any hardship beyond what [the defendant] has already contractually agreed to." *KeyCorp v. Holland*, No. 3:16-CV-1948, 2017 WL 345645, at *7 (N.D. Tex. Jan. 24, 2017); *accord Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200, 2017 WL 9360906, at *12 (W.D. Tex. Aug. 2, 2017). By enjoining Iron-IQ from further disclosure, acquisition, and use of Weatherford's trade secrets and confidential information, the TRO would simply enforce the parties' agreement, as stated in the EULA, that Iron-IQ would limit its "download[ing], install[ation], and use" of CygNet® *only* to Iron-IQ's "*internal* business purposes." (Verified Compl., Ex. 1, §§ 1, 1.1) (emphasis added). Iron-IQ already agreed to this limitation, so the TRO would not impose any new hardship on Iron-IQ. On the other hand, if Iron-IQ were allowed to continue breaching the EULA, it would continue to harm Weatherford,

"including through the loss of business from customers." (Verified Compl. ¶ 38.) A TRO will put a stop to these harmful breaches.

**Trade secret misappropriation:** The balance of equities also favors Weatherford because Iron-IQ has communicated a willingness to refrain from misappropriating CygNet® and its incorporated trade secrets in the future (although Iron-IQ has not yet followed through on that willingness). *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, 537 (N.D. Tex. 2003). In *Positive Software*, the balance of equities favored a copyright owner when the accused copyright infringer "offer[ed] to refrain voluntarily" from the allegedly infringing conduct. *Id.* The accused infringer's "willing[ness] to make that undertaking voluntarily" showed that any harm to the accused infringer would be "minimal and outweighed by the possible harm to [the copyright holder] flowing from continued infringement." *Id.* Similarly here, Iron-IQ's offer to refrain voluntarily from the conduct accused of trade secret misappropriation shows that any harm to Iron-IQ would be minimal compared to the harm to Weatherford from continued trade secret misappropriation. (*See* Verified Compl., ¶ 32, Ex. 7.)

### D.     The public interest favors a TRO.

The public interest favors a TRO, especially on Weatherford's contract and trade secret claims.

**Breach of contract:** "[I]t is in the public's best interest to enforce the terms of a valid contract." *Merchants Bonding Co. v. Burnside*, No. 4:22-CV-3651, 2023 WL 4140455, at *6 (S.D. Tex. June 21, 2023). This is especially true in cases involving the "contractual [t]erms of [u]se" of a software product. *See, e.g.*, *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 488, 510 (S.D.N.Y. 2018). Here, then, it is in the public interest to enforce the parties' EULA, which governs the use of the CygNet® software product.

**Trade secret misappropriation:** "The public interest is served by protecting trade secrets." *Picker Int'l, Inc. v. Blanton*, 756 F. Supp. 971, 983 (N.D. Tex. 1990) (citing *Metallurgical Indus., Inc. v. Fourtek*, 790 F.2d 1195, 1201 (5th Cir. 1986)). In particular, "a temporary restraining order serves the public interest by depriving [the defendant] of the benefit of the allegedly misappropriated trade secret and, in so doing, enforces better business ethics by depriving the alleged wrongdoers of the benefit of their wrongdoing." *Keurig Dr Pepper Inc. v. Chenier*, No. 4:19-CV-505, 2019 WL 3958154, at *12 (E.D. Tex. Aug. 22, 2019). Because Weatherford's requested TRO would require Iron-IQ to return, destroy, and stop using Weatherford's trade secrets, it would serve the public interest.

## IV. CONCLUSION

The Court should grant Weatherford's motion and enter a temporary restraining order that:

1.  enjoins Iron-IQ from obtaining, retaining, disclosing or using any of Weatherford's confidential information and trade secrets, in any tangible or electronic form, in: (a) Weatherford's CygNet® supervisory control and data acquisition ("SCADA") platform, (b) any derivative works of CygNet®, (c) any migration and conversion tools developed utilizing CygNet®, and (d) any improvements to CygNet®; and

2.  requires Iron-IQ to return to Weatherford or destroy all copies of confidential information and trade secrets, in any tangible or electronic form, in: (a) CygNet®, (b) any derivative works of CygNet®, (c) any migration and conversion tools developed utilizing CygNet®, and (d) any improvements to CygNet®.

Dated: September 12, 2023

Respectfully submitted,

BAKER & HOSTETLER LLP

*s/ Billy M. Donley*
Billy M. Donley, attorney-in-charge
Texas Bar No. 05977085
811 Main Street, Suite 1100
Houston, Texas 77002
T (713) 751-1600
F (713) 751-1717

Kevin W. Kirsch, of counsel
(*pro hac vice* application pending)
California Bar No. 166184
Ohio Bar No. 81996
Andrew E. Samuels, of counsel
(*pro hac vice* application pending)
Ohio Bar No. 90189
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
T (614) 228-1541
F (614) 228-2616

Jared A. Brandyberry, of counsel
(*pro hac vice* application pending)
Ohio Bar No. 88491
Colorado Bar No. 44775
1801 California Street, Suite 4400
Denver, Colorado 80202
T (303) 861-0600
F (303) 861-7805

*Attorneys for Plaintiffs*
*Weatherford U.S., L.P. and*
*Weatherford Technology Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

Under Fed. R. Civ. P. 5(b)(2)(E), Local Rule 5.1, and Local Rule 5.3, the undersigned hereby certifies that true and correct copies of the foregoing have been served on Iron IQ, Inc. at the address below.

Registered Agent, IRON IQ, INC., 610 Rood Ave, Grand Junction, CO 81501


Dated: September 12, 2023                    *s/ Billy M. Donley*

## CERTIFICATE REGARDING NOTICE

Under Fed. R. Civ. P. 65(b)(1)(B), I certify that Weatherford is notifying Iron-IQ of this motion concurrently with the filing of this motion. Further notice should not be required because Iron-IQ has refused to engage with Weatherford on this matter, going so far as to demand that Weatherford "cease and desist" from further communication about Iron-IQ's conduct.

Dated: September 12, 2023                    *s/ Billy M. Donley*