**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| WEATHERFORD U.S., L.P. and WEATHERFORD TECHNOLOGY HOLDINGS, LLC, | § § § § § § § § § § § § § | Civil Action No. 23-cv-03416 |
| *Plaintiffs*, | | |
| vs. | | |
| IRON IQ, INC., | | |
| *Defendant*. | | |

**PLAINTIFFS WEATHERFORD U.S., L.P. AND
WEATHERFORD TECHNOLOGY HOLDINGS, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR EXPEDITED DISCOVERY</u>**

Plaintiffs Weatherford U.S., L.P. ("**Weatherford U.S.**") and Weatherford Technology Holdings, LLC ("**Weatherford Tech**") (collectively "**Weatherford**") provide the following memorandum of law in support of their motion for expedited discovery from Defendant Iron IQ, Inc. ("**Iron-IQ**") under Fed. R. Civ. P. 26(d)(1) and Fed. R. Civ. P. 30(a)(2)(A)(iii). For the following reasons, Weatherford's motion for expedited discovery should be granted.

**I.     NATURE AND STAGE OF THE PROCEEDING**

Weatherford filed this action to recover damages and injunctive relief for trade secret misappropriation, breach of contract, harmful access by computer, unfair competition, and tortious interference. Iron-IQ devised and executed a scheme to obtain unauthorized copies of Weatherford's CygNet® supervisory control and data acquisition ("SCADA") platform to, among other things, misappropriate Weatherford's trade secrets. On September 12, 2023, Weatherford filed a verified complaint (Dkt. No. 1, the "Verified Complaint") and a motion for a temporary

1

restraining order (Dkt. No. 2, the "TRO Motion"). The Verified Complaint and TRO Motion were served on Iron-IQ's counsel, Andrew Skale, via email correspondence on September 12, 2023. Weatherford served the summons (*see* Dkt. No. 9) and Your Honor's Court Procedures on Iron-IQ's counsel, Andrew Skale, via email correspondence on September 14, 2023. A copy of this motion, the supporting memorandum of law, and the proposed order were also served on Iron-IQ's counsel, Andrew Skale, in advance of the meet and confer concerning this motion on September 14, 2023.

## II. STATEMENT OF ISSUES

Weatherford respectfully requests that the Court determine whether Weatherford has demonstrated the good cause required to grant leave under Fed. R. Civ. P. 26(d)(1) and Fed. R. Civ. P. 30(a)(2)(A)(iii) for limited expedited written and testimonial discovery. *See St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 239-40 (S.D. Tex. 2011). Weatherford seeks expedited discovery concerning the information that Iron-IQ refused to provide in pre-litigation correspondence related to Iron-IQ's admitted unauthorized access and possession of copies of Weatherford's software—the CygNet® SCADA platform. Expedited discovery is necessary to determine the extent of Iron-IQ's misconduct and ensure that the potential irreparable harm facing Weatherford is accounted for and stopped.

## III. FACTUAL BACKGROUND

Weatherford, based in Houston, Texas, offers its CygNet® SCADA platform specifically for the oil and gas industry to allow operators to process, manage, and respond to data collected from a variety of sources—including downhole sensors, electronic flow measurement (EFM) devices, wellheads, surface facilities, plants, and pipelines. (Verified Compl. ¶¶ 6–7, 18.) Through years of research and development, Weatherford has refined the user interface of the CygNet®

2

SCADA platform to optimize how customers view and interact with their data. (Id. ¶ 19.) For each customer, Weatherford customizes the CygNet® SCADA platform to interact with customer-specific devices and specifications. This customization is done through scripts that allow data to be pulled and collected from customer devices (e.g., sensors, electronic flow measurement (EFM) devices) and that allow customer devices to be activated by users of the software. (Id. ¶ 20.)

Iron-IQ, based in Grand Junction, Colorado, offers a competing SCADA platform and has contacts with the State of Texas and this District related to its conduct with the Iron-IQ SCADA platform. (*Id.* ¶¶ 8, 14–17.) Iron-IQ admitted that it accessed the CygNet® SCADA platform (*see id.* ¶ 25, Ex. 3, 8) and therefore agreed to be bound by the EULA for the CygNet® SCADA platform, which provided Iron-IQ with "a *limited*, non-exclusive and non-transferable license" to, among other things, "download, install, and use" CygNet® *only* for Iron-IQ's "*internal* business purposes." (*Id.*, Ex. 1, §§ 1, 1.1) (emphasis added). Iron-IQ's business model is focused on moving customers from legacy SCADA systems to Iron-IQ's competing product line. (*Id.* ¶ 21.) Weatherford recently learned that Iron-IQ employees were downloading versions of the CygNet® SCADA platform by using credentials from third-party licensees. (*Id.* ¶ 22.) Iron-IQ does not have, and has never had, a license to access the CygNet® SCADA platform. (*Id.* ¶ 23.) Accordingly, Weatherford immediately reached out to Iron-IQ on August 14, 2023, and demanded that Iron-IQ cease its access to the CygNet® SCADA platform, destroy all improperly obtained copies of the CygNet® SCADA platform, and explain why Iron-IQ had improperly accessed the CygNet® SCADA platform. (*See id.* ¶ 24, Ex. 2.)

Iron-IQ's counsel responded on August 21, 2023 and freely admitted that Iron-IQ had accessed the CygNet® SCADA platform, but claimed such use was proper because Iron-IQ was using a 3-day trial version of the software. (*Id.* ¶ 25.) Iron-IQ admitted to using what it said was a

3-day trial at least two times, for a total of 6 days. (*Id.* ¶ 25, Ex. 3, 8.) Iron-IQ failed to acknowledge that a "trial version" is only accessible to existing CygNet® SCADA platform licensees and is not available to any unlicensed party. (*Id.* ¶ 26.) Any person accessing any version of the CygNet® SCADA platform must execute a negotiated written license agreement before access is allowed. (*Id.*) Access cannot occur without login information, which is only provided after such written license agreement is executed. (*Id.*) Iron-IQ has neither entered into such a written license agreement nor received login information to allow for proper access to the CygNet® SCADA platform. (*Id.*) Accordingly, Iron-IQ's August 21, 2023 letter is an admission that Iron-IQ knowingly accessed the CygNet® SCADA platform without authorization, and thus is an admission of liability for Weatherford's causes of action. (*Id.* ¶ 27.)

With possession of unauthorized copies of Weatherford's CygNet® software, Iron-IQ is in a position to use Weatherford's trade secrets to develop Iron-IQ's competing SCADA platform, to develop customer migration tools, to migrate customer data, and to compete against Weatherford. And Iron-IQ is preventing Weatherford from discovering the extent of Iron-IQ's misconduct. Weatherford repeatedly requested the following information from Iron-IQ regarding Iron-IQ's admitted unauthorized access to Weatherford's CygNet® software:

1. What was Iron-IQ's purpose for the use of the CygNet® software?

2. How many individuals at Iron-IQ used the CygNet® software for the purpose?

3. How long did the individuals at Iron-IQ use the CygNet® software to achieve the purpose?

4. How many 3-day trials were obtained by the individuals at Iron-IQ in order to achieve the purpose?

5. How did the individuals at Iron-IQ who used the CygNet® software for the purpose obtain the 3-day trials?

6. Which individuals at Iron-IQ obtained the 3-day trials for the purpose?

4

> 7. What company name(s) were used by the individuals at Iron-IQ to obtain the 3-day trials?
>
> 8. If the 3-day trials were not obtained using the Iron-IQ company name, why?

(*See* Verified Complaint at ¶ 30, Ex. 5–6.) In response to Weatherford's inquiries about Iron-IQ's unauthorized access to Weatherford's CygNet® software, Iron-IQ refused to provide the requested information and instead demanded that Weatherford's counsel "cease and desist" from further communication about Iron-IQ's conduct. (*Id.* ¶ 31, Ex. 7.) Iron-IQ left Weatherford no choice but to move for a TRO to protect its contract and intellectual property rights and to prevent irreparable harm and seek expedited discovery.

## IV. EXPEDITED DISCOVERY SOUGHT BY WEATHERFORD

To understand and mitigate Iron-IQ's misconduct and the irreparable harm facing Weatherford, Weatherford seeks expedited written discovery under Fed. R. Civ. P. 33 and 34 (as permitted by Fed. R. Civ. P. 26(d)(1)) and testimonial discovery under Fed. R. Civ. P. 30(a)(2)(A)(iii). Weatherford seeks complete and verified responses to the following interrogatories and the related production of documents within five days of the Court granting this motion:

> **Interrogatory No. 1:** Provide complete responses to the questions listed in Weatherford's August 30, 2023 correspondence (see Verified Complaint at Ex. 6).
>
> **Interrogatory No. 2**: What was Damon Baillie's purpose for downloading CygNet® SCADA platform version 9.6 on August 18, 2023?
>
> **Interrogatory No. 3**: Why did Damon Baillie use login credentials from Caerus Oil & Gas in order to download CygNet® SCADA platform version 9.6 on August 18, 2023?
>
> **Interrogatory No. 4**: Describe in detail each use by Iron-IQ of the CygNet® SCADA platform version 9.6 downloaded on August 18, 2023, by Damon Baillie.
>
> **Interrogatory No. 5:** Identify all customers that Iron-IQ has migrated from Iron-IQ's SCADA platform from Weatherford's CygNet® SCADA platform in the last three years.

>**Document Request No. 1:** Produce all documents and/or ESI related to Interrogatories Nos. 1-5.

Then, within five days of receiving Iron-IQ's verified interrogatory responses and production of documents, Weatherford seeks to take the Fed. R. Civ. P. 30(b)(1) deposition of (1) Iron-IQ's CEO, Michael Ligrani; (2) Iron-IQ employee Damon Baillie who accessed and downloaded the CygNet® software without authorization as recently as August 18, 2023; and (3) the 30(b)(6) deposition of Iron-IQ related to the following topics:

>**Deposition Topic No. 1:** Information sought in Weatherford's August 30, 2023 correspondence (*see* Verified Complaint at Ex. 6).
>
>**Deposition Topic No. 2:** Iron-IQ's responses to Interrogatories Nos. 1-5.
>
>**Deposition Topic No. 3:** Documents produced by Iron-IQ in response to Interrogatories Nos. 1-5 or Document Request No. 1.

The above discovery is narrowly tailored to address the irreparable harm facing Weatherford due to Iron-IQ's admitted unauthorized access to Weatherford's CygNet® software.

## V.   LEGAL SUPPORT

Pursuant to Fed. R. Civ. P. 26(d)(1) and Fed. R. Civ. P. 30(a)(2)(A)(iii), a plaintiff may propound written discovery, shorten the response time for such written discovery, and take depositions of an adverse party prior to the Fed. R. Civ. P. 26(f) meeting of counsel with leave of Court or via stipulation. In this district, courts typically apply a good cause standard to determine whether expedited discovery is appropriate—*i.e.*, whether leave should be granted to take discovery on an expedited basis prior to the Fed. R. Civ. P. 26(f) conference. *St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 239-40 (S.D. Tex. 2011). The burden of showing good cause is on the party moving for the expedited discovery. *Id.* at 240. To evaluate whether good cause is present, Courts consider the following: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose of requesting expedited

6

discovery; (4) the burden on defendant; and (5) how far in advance of the typical discovery process the request was made. *Id*. at n.4.[1] These factors allow the Court to "examine the discovery request on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Id*. at 239 (S.D. Tex. 2011); *see also Well Cell Global LLC v. Calvit*, 2022 WL 4389705, at *1 (S.D. Tex. 2022). Expedited discovery has been granted where the movant's requests were narrowly tailored, and the discovery would "better enable the court to judge the parties' interests and respective chances for success on the merits" related to a Fed. R. Civ. P. 65 injunction or restraining order. *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996); *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984).").

## VI. ARGUMENT

Here, Weatherford seeks narrowly tailored expedited discovery related to Iron-IQ's admitted unauthorized access and downloading of Weatherford's CygNet® software. This information will allow Weatherford and the Court to determine the magnitude of the irreparable harm facing Weatherford. Thus, the good cause factors support granting leave to pursue expedited discovery.

### (1)-(3) Whether a Preliminary Injunction is Pending, the Breadth of the Discovery Requests, and the Purpose of Requesting Expedited Discovery

On September 12, 2023, Weatherford filed its Verified Complaint (Dkt. No. 1) and the TRO Motion (Dkt. No. 2) seeking an order that provides the following relief:

---

[1] In the alternative the Court may use the standard set forth in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982), where the Court evaluates the requested discovery by factors similar to those of the preliminary injunction analysis: "(1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of the irreparable injury; and (4) some evidence that the injury that will result without expedited discovery is greater than the injury the party will suffer if the expedited relief is granted." *Notaro*, 95 F.R.D. at 405.

7

>(i) enjoins Defendant Iron IQ, Inc. ("Iron-IQ") from obtaining, retaining, disclosing or using any of Weatherford's confidential information and trade secrets, in any tangible or electronic form, in: (a) Weatherford's CygNet® supervisory control and data acquisition ("SCADA") platform, (b) any derivative works of CygNet®, (c) any migration and conversion tools developed utilizing CygNet®, and (d) any improvements to CygNet®; and
>
>(ii) requires Iron-IQ to return to Weatherford or destroy all copies of confidential information and trade secrets, in any tangible or electronic form, in: (a) CygNet®, (b) any derivative works of CygNet®, (c) any migration and conversion tools developed utilizing CygNet®, and (d) any improvements to CygNet®.

The expedited discovery sought by Weatherford through this motion will enable Weatherford and the Court to determine the extent of Iron-IQ's misconduct that must be accounted for in enforcing the TRO and any subsequent preliminary injunction. Iron-IQ has admitted that its employees accessed and downloaded Weatherford's CygNet® SCADA platform, without authorization, but Iron-IQ has refused to explain the purpose and extent of Iron-IQ's actions. (Verified Complaint at ¶¶ 24-27 and Exs. 3 and 8.) Therefore, the extent of Iron-IQ's use of Weatherford's confidential information and trade secrets (e.g., to produce derivate works or create migration or conversion tools) and Iron-IQ's continued possession of Weatherford's confidential information and trade secrets (e.g., information copied from CygNet® SCADA platform now incorporated into Iron-IQ's competing SCADA platform) is uncertain and requires expedited discovery.

The expedited written and testimonial discovery sought by Weatherford is related to the pending TRO Motion and limited to determining the extent and purpose behind Iron-IQ's unauthorized access to Weatherford's CygNet® software (e.g., how Iron-IQ accessed, how many times Iron-IQ accessed, who at Iron-IQ accessed, when Iron-IQ accessed, what Iron-IQ copied or used, and why Iron-IQ accessed) and the associated harm (e.g., the migration of customers from Weatherford's CygNet® software to Iron-IQ's SCADA platform). The requested written discovery covers the same information Weatherford repeatedly sought in pre-litigation correspondence in the hopes of avoiding this motion. (*Id.* at ¶ 24 and Ex. 2.) The requested

testimonial discovery allows Weatherford to verify and examine the information and documents produced by Iron-IQ in response to the written discovery. At the conclusion of the expedited discovery, Weatherford aims to be able to identify, with detail, the extent of Iron-IQ's unauthorized access, what Iron-IQ did with the information obtained through Iron-IQ's unauthorized access, and the immediate harm posed by Iron-IQ's conduct. This information will hopefully allow the Court to fashion injunctive relief to alleviate any burden faced by Iron-IQ while protecting Weatherford from irreparable harm.

### (4)-(5) The Burden on Defendant and How Far in Advance of the typical Discovery Process the Request Was Made

While the expedited discovery (both the earlier discovery and shortened response time) will require Iron-IQ to collect and produce information, documents, and deponents on an expedited basis, this effort is merely advancing Iron-IQ's burden by approximately 45-90 days because the information would be sought in discovery conducted on a non-expedited basis. In other words, granting this motion will merely advance in time any burden imposed on Iron-IQ. But such advancement is necessary to properly fashion injunctive relief to stop the irreparable harm incurred through Iron-IQ's admitted misconduct. Moreover, the burden imposed on Iron-IQ is minimal given the narrow scope of the information, documents, and deposition testimony requested.

## VII.  CONCLUSION

Because good cause exists to grant leave of the time limitations imposed by Fed. R. Civ. P. 26(d)(1) and Fed. R. Civ. P. 30(a)(2)(iii), Weatherford respectfully requests that the Court grant this motion and permit expedited discovery limited to the written and testimonial discovery identified herein.

Dated: September 14, 2023

Respectfully submitted,

*s/ Billy M. Donley*
Billy M. Donley, attorney-in-charge
bdonley@bakerlaw.com
**Baker & Hostetler LLP**
811 Main Street, Suite 1100
Houston, TX 77002
Telephone:   713.646.1382

Kevin W. Kirsch
kkirsch@bakerlaw.com
Andrew E. Samuels
asamuels@bakerlaw.com
**Baker & Hostetler LLP**
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
Telephone:   614.228.1541

Jared A. Brandyberry
jbrandyberry@bakerlaw.com
**Baker & Hostetler LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Telephone:   303.764.4072

*Attorneys for Plaintiffs*
*Weatherford U.S., L.P.*
*and Weatherford Technology Holdings, LLC*