United States District Court
Southern District of Texas
**ENTERED**
October 29, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **WEATHERFORD U.S., L.P.,** *et al.,* | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:23-cv-3416** |
| | § | |
| **IRON IQ, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Plaintiffs Weatherford U.S., L.P. and Weatherford Technology Holdings, LLC's (collectively, "Weatherford") Motion for Reconsideration or Clarification of Order Allowing Promissory Estoppel Counterclaim (ECF No. 110).[1]  Based on a review of the motion, arguments, and relevant law, the Court **RECOMMENDS** Weatherford's Motion for Reconsideration or Clarification of Order Allowing Promissory Estoppel Counterclaim (ECF No. 110) be **DENIED**.

## I.    Background

Weatherford filed suit against Defendant Iron IQ, Inc. ("Iron IQ") on September 12, 2023.  (ECF No. 1).  The basis of this suit, as alleged by

---

[1] On April 24, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72.  (ECF No. 88).

Weatherford, is that "Iron-IQ devised and executed a scheme to obtain unauthorized copies of Weatherford's CygNet® supervisory control and data acquisition ('SCADA') platform." (ECF No. 65-1 at ¶ 2).

On September 27, 2023, Weatherford and Iron IQ entered into a stipulated preliminary injunction in which Iron IQ "is enjoined from obtaining, retaining, disclosing, copying, or using any of Weatherford's confidential information and trade secrets, in any tangible or electronic form, in" CygNet. (ECF No. 29 at 1).  The stipulated preliminary injunction also required Iron IQ "to immediately return to Weatherford or destroy all copies in its possession, custody, or control of confidential information and trade secrets, in any tangible or electronic form, in" CygNet and states that Iron IQ "may not copy, possess, access, use, install or download CygNet®, or login to CygNet®, or login to Weatherford's non-public CygNet® download website."  (*Id.* at 1–2).  However, the stipulated preliminary injunction allows "Iron IQ [to] act on behalf of a licensed CygNet® customer, under the customer's license, and only on the customer's systems (directly or via remote access)." (*Id.* at 2).

On June 7, 2024, the Court filed a Memorandum and Recommendation, recommending Iron IQ's Motion for Leave to Amend Counterclaims (ECF No. 84) be granted as to its proposed promissory estoppel claim, among other counterclaims.  (ECF No. 93 at 37).  District Court Judge Andrew Hanen adopted this recommendation on July 12, 2024.  (ECF No. 100).

2

## II.    Legal Standard

"When a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, then Rule 54(b) controls." *Cormier v. Turnkey Cleaning Servs., L.L.C.*, 295 F. Supp. 3d 717, 719–20 (W.D. La. 2017). "Under Rule 54(b), the district court possesses the inherent power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Id.* at 720. "Rule 54(b) motions are construed under the same standards that govern Rule 59(e) motions to alter or amend a final judgment." *Id.* "To prevail on a Rule 59(e) motion, the moving party must 'clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" *Id.* (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "In general, reconsideration of a judgment 'is an extraordinary remedy that should be used sparingly.'" *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)). Reconsideration under Rule 54(b) is within the trial court's broad discretion. *Koeppel v. Hartford Accident & Indem. Co.*, 608 F. Supp. 3d 398, 402 (E.D. La. 2022).

"District courts will 'often accept [motions to reconsider] in the interest of substantial justice.'" *Anderson v. Red River Waterway Comm'n*, 16 F. Supp. 2d 682, 683 (W.D. La. 1998), *aff'd*, 231 F.3d 211 (5th Cir. 2000) (quoting *Baustian v. State of La.*, 929 F. Supp. 980, 981 (E.D. La. 1996)). "Although the court will consider such a motion, one 'based on recycled arguments only serves

3

to waste the resources of the court.'" *Anderson*, 16 F. Supp. 2d at 683 (quoting *Baustian*, 929 F. Supp. at 981). "A ruling, therefore, 'should only be reconsidered where the moving party has presented substantial reasons for reconsideration.'" *Id.* (quoting *State of La. v. Sprint Communications Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995)). "[R]evisiting the issues already addressed is not the purpose of a motion to reconsider, and advancing new arguments or supporting facts which were otherwise available [when the original motion was filed] is likewise inappropriate." *Id.* (quotations omitted).

## III.    Discussion

Weatherford asks the Court "to reconsider its Order and find that Iron-IQ's promissory estoppel claim is futile and is, therefore, stricken." (ECF No. 110 at 3). "In the alternative, Weatherford requests the Court to clarify its Order making it clear that Iron-IQ's counterclaims cannot be based on 'Weatherford's pre-suit demands, [this] lawsuit, and [the stipulated and agreed] injunction.'" (*Id.* (quoting 110-1 at 5)).

First, Weatherford argues Iron IQ's promissory estoppel claim is no longer based on "Iron IQ's allegation that Weatherford notified prospective customers that Iron IQ can no longer perform integration services under the stipulated injunction" ("the Allegation") because Iron IQ did not assert the Allegation in its Amended Counterclaims (ECF No. 101) or its supplemental interrogatory responses (ECF No. 110-1). (ECF No. 110 at 4 (quotations

omitted)).  Weatherford alleges Iron IQ's promissory estoppel claim is now erroneously based on Weatherford barring it from pursuing thirty newly identified prospective customers due to Weatherford's pre-suit demands, the lawsuit, and the stipulated preliminary injunction. (*Id.* at 5).  Iron IQ counters that its promissory estoppel claim is supported with multiple allegations, and it never abandoned the Allegation.  (ECF No. 115 at 1).  Moreover, Iron IQ argues the Court did not only rely upon this allegedly abandoned allegation, but rather, the Court compared elements of promissory estoppel to the facts asserted by Iron IQ in allowing amendment of this counterclaim.  (*Id.* at 1–2).

The Court agrees with Iron IQ.  Although Iron IQ does not explicitly re-state the Allegation in their Amended Counterclaims and supplemental interrogatory responses, the promissory estoppel claim is not futile as alleged. In the Court's Memorandum and Recommendation (ECF No. 93), the Court discusses the Allegation with respect to Weatherford's argument "that the stipulated preliminary injunction contradicts Iron IQ's promissory estoppel claim because the stipulated preliminary injunction 'expressly confirms Iron IQ's admission that it is not prevented from *lawfully* performing CygNet® integrator services.'"  (*Id.* at 34 (quoting ECF No. 85 at 19) (emphasis in original)).  The Court found "[t]he fact that Weatherford does not dispute that Iron IQ is an integrator with actual customers along with Iron IQ's allegation that Weatherford notified prospective customers that Iron IQ can no longer

perform integration services is evidence to base its promissory estoppel claim on." (*Id.* at 35 (citing ECF No. 84-2 at ¶ 180)).  The Court pointed to this allegation showing Weatherford's argument that the stipulated preliminary injunction did not contradict Iron IQ's promissory estoppel claim. (*See id.* at 34–35).  However, immediately following this discussion, the Court found Iron IQ sufficiently alleged facts that support a promissory estoppel claim without citing to the Allegation:

> Here, Iron IQ alleges "Weatherford, through communications and/or conduct, made a promise to Iron-IQ that it would be able to perform integrator services with [Weatherford's On-Site] training" (promise); "Iron-IQ's reliance on Weatherford's promise was foreseeable as Weatherford controlled the SCADA integrator market, controlled who it would allow to serve as outside integrators for CygNet, charged third parties a fee to provide training on CygNet integration services, and allowed other outside integrators to perform integrator services" (foreseeability of reliance); and "Iron-IQ relied on Weatherford's promise by expending significant costs and resources to obtain training from Weatherford on the CygNet platform, promoting and marketing its integration services to customers, and developing an integration business that involved integration of CygNet" (substantial detrimental reliance). (ECF No. 84-2 at ¶¶ 193–96).  Iron IQ has pled a facially plausible claim for relief because it is "not required to plead each and every element of the claim in specific factual detail." *Team Healthcare/Diagnostic Corp. v. Blue Cross & Blue Shield of Tex.*, No. 3:10-cv-1441-BH, 2012 WL 1617087, *6 (N.D. Tex. May 7, 2012).

(*Id.* at 36–37).  As such, Iron IQ's failure to re-assert the Allegation is not detrimental to its promissory estoppel claim at this juncture of litigation.

Next, the Court must determine whether Iron IQ's promissory estoppel counterclaim should be reconsidered based on its interrogatory answer where Iron IQ lists prospective business relationships it "was barred from pursuing due to Weatherford's pre-suit demands, lawsuit, and [the stipulated preliminary] injunction." (ECF No. 110-1 at 5). Weatherford argues Iron IQ cannot base its promissory estoppel claim on pre-suit demands, lawsuit, or stipulated preliminary injunction because: (1) Texas law prohibits it and (2) the stipulated preliminary injunction is an express contract. (ECF No. 110 at 6).

First, Weatherford argues the "new basis" for Iron IQ's promissory estoppel claim fails because Texas law prohibits it. (ECF No. 110 at 6). Weatherford asserts "Texas law allows absolute privilege or immunity for a communication that is related to the litigation." (*Id.*). However, Weatherford fails to cite a case where this privilege or immunity specifically applies as to a promissory estoppel claim. *See Intel Corp. v. Intel-Logistics, Inc.*, No. 05-cv-2255, 2006 WL 1517510, at *2 (S.D. Tex. May 30, 2006) ("The statements in the complaint and subpoenas are covered by the litigation privilege under Texas law and cannot form the basis of a claim for tortious interference or business disparagement."); *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) ("Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or

malice with which they are made."); *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 111, 166 S.W.2d 909, 912 (1942) ("Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel.").

Although the Court is aware that the privilege or immunity for communications related to litigation is not limited to libel and slander cases, Weatherford has failed to provide case law showing that the privilege or immunity applies outside of tort claims. "Promissory estoppel is not a tort; it is an equitable doctrine." *United States v. Ins. Co. of the State of Pa.*, No. 5:15-cv-1744, 2017 WL 1458203, at *2 n.4 (W.D. La. Apr. 24, 2017) (citing *Eagle Metal Prod., LLC v. Keymark Enters., LLC*, 651 F.Supp.2d 577, 592 (N.D. Tex. 2009) ("The promissory estoppel claim is of a different order from the tort claims. Promissory estoppel is a quasi-contract theory. . . . This cause of action applies when a contract does not exist, but equity compels enforcement of the promise.")). As such, to the extent Weatherford argues the absolute privilege or immunity for a communication that is related to the litigation applies to claims other than libel and slander, the cases it provides refer to other tortious acts rather than equitable claims. *See Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021) ("Although commonly applied in defamation cases, the privilege prohibits any tort litigation based on the

content of the communication at issue." (quotations omitted)); *Laub v. Pesikoff*, 979 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("Any communication, even perjured testimony, made in the course of a judicial proceeding, cannot serve as the basis for a suit in tort."). As such, this argument is unavailing.

Second, Weatherford argues, the "agreed and stipulated preliminary injunction . . . cannot serve as the basis for the promissory estoppel claim because it is an agreed stipulation and order [and a] stipulation is an express contract." (ECF No. 110 at 6). Although the Court agrees that a stipulation is a valid contract under Texas law, the issue here concerns a stipulated preliminary injunction rather than a stipulation.

"In Texas, '[a] stipulation is a contract between the parties to a proceeding.'" *Yado v. Palomar Specialty Ins. Co.*, No. 7:17-cv-00083, 2017 WL 7735159, at *3 (S.D. Tex. May 11, 2017) (quoting *Kinner Transp. Enters., Inc. v. Texas*, 614 S.W.2d 188, 189 (Tex. App.—Eastland 1981, no writ)). "A stipulation has been held to be such an admission as to constitute a waiver of proof as to the matters stipulated." *Kinner Transp. Enters., Inc.*, 614 S.W.2d at 189. "'A court will not construe a stipulation so as to effect an admission of something intended to be controverted or so as to waive a right not plainly agreed to be relinquished.'" *Id.* at 190 (quoting *U.S. Fire Ins. Co. v. Carter*, 468 S.W.2d 151, 154 (Tex. App.—Dallas 1971), writ ref'd n.r.e., 473 S.W.2d 2 (Tex.

1971)).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

While the Parties agreed to the preliminary injunction in the instant case, it does not amount to a stipulation or admission of proof of certain matters.  The two are not synonymous.  Further, the movant, Weatherford, has failed to cite a case standing for the notion that a stipulated preliminary injunction is a valid contract.  As such, the Court finds this argument unavailing.

Moreover, in the alternative, "Weatherford requests the Court clarify its Order making it clear that Iron-IQ's counterclaims cannot be based on Weatherford's pre-suit demands, [this] lawsuit, and [the stipulated and agreed] injunction."  (ECF No. 110 at 3 (quotations omitted)).  Because the Court does not find any of Weatherford's arguments adequately supported by case law or relevant authority, the Court will not issue a clarification.

## IV.  Conclusion

Based on the foregoing, the Court **RECOMMENDS** Weatherford's Motion for Reconsideration or Clarification of Order Allowing Promissory Estoppel Counterclaim (ECF No. 110) be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file

written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on October 29, 2024.

_____
Richard W. Bennett
United States Magistrate Judge

11